IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRENT WADE SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | No. 3:25-cv-275-L-BN |
| KRISTI NOEM, Secretary, | § | |
| Department of Homeland, et al., | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

This case has been referred to the undersigned United States magistrate judge

for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference

from United States District Judge Sam A. Lindsay. *See* Dkt. No. 1.

On February 4, 2025 Plaintiff Brent Wade Smith filed a *pro se* complaint (the

"Complaint") alleging employment and discrimination claims against several

government officials (collectively, "Defendants"). *See* Dkt. No. 3.

On May 31, 2025, Defendants filed a motion to dismiss. *See* Dkt. No. 12.

Smith responded, *see* Dkt. No. 22, and Defendants replied, *see* Dkt. No. 23.

Smith filed a sur-reply without leave on July 27, 2025. *See* Dkt. No. 24.

Defendants moved to strike the sur-reply. *See* Dkt. Nos. 25 & 26.

Smith retroactively filed a motion for leave to file his sur-reply. *See* Dkt. No.

27. In support of their motion to strike, Defendants filed a second brief and, in the

alternative, moved for leave to file a sur-sur-reply in support of their motion to

dismiss. *See* Dkt. No. 28.

At Defendants' request, *see* Dkt. No. 34, the Court stayed discovery and all deadlines until the resolution of the pending motions [Dkt. Nos. 12, 25, 27, & 28], *see* Dkt. No. 35.

The undersigned now enters these findings, conclusions, and recommendation that the Court should grant the motion to strike [Dkt. No. 25], deny Smith's motion for leave [Dkt. No. 27] and Defendants' motion for leave [Dkt. No. 28], grant the motion to dismiss [Dkt. No. 12], and dismiss this lawsuit with prejudice.

## Legal Standards

### I.   Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction.

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

The Court must dismiss a complaint for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (cleaned up). The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v.*

*Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case originally filed in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted). The plaintiff must demonstrate standing for each claim and form of relief sought. *See DaimlerChrysler Corp. v. Duno*, 547 U.S. 332, 352 (2006) (noting that "our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press" and that "[w]e have insisted ... that a plaintiff must demonstrate standing separately for each form of relief sought" (cleaned up)).

The United States Court of Appeals for the Fifth Circuit recognizes a distinction between a "facial" attack to subject-matter jurisdiction, which is based only on the pleadings, and a "factual" attack to jurisdiction, which is based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *accord Ramming*, 281 F.3d at 161 ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Regardless of the nature of the attack, the plaintiff seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161.

Where, as here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack is presumptively facial, and the Court need look only to the sufficiency of the allegations of plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1989); *Paterson*, 644 F.2d at 523.

But, on a factual attack, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule 12(b)(1) motion, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523. "When considering Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court must give the plaintiff an opportunity to be heard, particularly when disputed factual issues are important to the motion's outcome. In some cases, an oral hearing may be indispensable due to the complicated factual disputes underlying the case." *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 319 (5th Cir. 2012) (footnotes omitted). But "an oral hearing is not always necessary if the parties receive an adequate opportunity to conduct discovery and otherwise present their arguments and evidence to the court." *Id.* at 319-20 (footnote omitted).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. "This requirement prevents a court without jurisdiction from prematurely dismissing a case with

prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* (citations omitted).

"The existence of subject matter jurisdiction is determined at the time of removal." *In re Bissonnet Inv. LLC*, 320 F.3d 520, 525 (5th Cir. 2023). To make this determination, the Court considers the claims in the state court petition as they existed at the time of removal. *See Juanopulos v. Salus Claims Mgmt. LLC*, 518 F. Supp. 3d 973, 975 (S.D. Tex. 2021) (citing *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002)).

## II.     Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process

Service of process is "fundamental to any procedural imposition on a named defendant" and is therefore "the official trigger for responsive action by an individual or entity named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350, 353 (1999). Federal Rule of Civil Procedure 12(b)(5) provides for dismissal for insufficient service of process, and "[a] motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process." *Quinn v. Miller*, 470 F. App'x 321, 323 (5th Cir. 2012) (per curiam); *see also Raburn v. Dae Woo, Inc.*, No. 3:09-cv-1172-G, 2010 WL 743933, at *1 (N.D. Tex. Mar. 3, 2010) ("A 12(b)(5) motion to dismiss poses a challenge to the manner or method of service attempted by the plaintiff rather than the form or content of the summons." (citing *Tinsley v. Comm'r of Internal Revenue Serv.*, No. 3:96-cv-1769-P, 1998 WL 59481, at *3 (N.D.

Tex. Feb. 9, 1998))).

"Once the validity of service has been contested, the plaintiff bears the burden of establishing its validity." *In re Katrina Canal Breaches Litig.*, 309 F. App'x 833, 835 (5th Cir. 2009) (per curiam) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992) ); *accord Quinn*, 470 F. App'x at 323. A plaintiff's *pro se* status does not excuse any failure to properly effect service of process. *See Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).

## III.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins*

*Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that a plaintiff contends entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 547 U.S. at 12,

and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 547 U.S. at 11. That rationale has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of

matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2).

Because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

One such reason is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

## Analysis

### I.   Motion to Strike and Motions for Leave

Without leave of court, Smith filed a sur-reply. *See* Dkt. No. 24. He then moved for leave to file it. *See* Dkt. No. 27. Defendants moved to strike the sur-reply, *see* Dkt. No. 25, and, in the alternative, moved for leave to file a sur-sur-reply, *see* Dkt. No. 28.

The local rules do not permit a sur-reply to be filed without leave of court. *See, e.g.*, N.D. TEX. CIV. R. 7.1(f) (allowing reply to be filed but not providing for sur-reply to be filed). The Court incorporated the local rules in its Order Setting Briefing Schedule. *See* Dkt. No. 16. It ordered Smith to file a response to the motion to dismiss and allowed Defendants to file a reply to Smith's response. *See id*; N.D. TEX. CIV. R. 7(e), (f). The Court further expressly disallowed the filing of a sur-reply: "[n]o supplemental pleadings, briefs, or evidence or other documents may be filed in connection with the motion to dismiss or response thereto without leave of court except to the extent permitted without leave of court by Federal Rule of Civil Procedure 15(a)(1)." Dkt. No. 16 at 1.

Sur-replies are highly disfavored and are permitted only in exceptional or extraordinary circumstances. *See Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001). To meet its burden to show such circumstances, a party seeking leave to file a sur-reply brief must identify new issues, theories, or arguments that the movant raised for the first time in their reply brief or attempts to present new evidence at the reply stage. *See Weems v. Hodness*, No. 10-cv-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011) (citing *Lacher*, 147 F. Supp. 2d at 539-40); *Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, No. 3:01-cv-1397-P, 2003 WL 251318, at *8 (N.D. Tex. Feb. 3, 2003)).

Because "the movant is entitled to file the last pleading, [s]urreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last

word on a matter." *Lacher*, 147 F. Supp. 2d at 539.

In his motion for leave to file his sur-reply, Smith contends that "Defendants assert additional theories" in their reply. Dkt. No. 27 at 1. (The Court's citations to page numbers in the record correspond with document page numbers, which may differ from Bates numbers or printed page numbers.)

But the undersigned finds no new arguments or legal theories in Defendants' reply. *See* Dkt. No. 23. Smith's one-page sur-reply addresses only Defendants' argument that his claim was untimely. *See* Dkt. No. 24. Not only was this argument first raised in Defendants' motion to dismiss, *see* Dkt. No. 12 at 17-20, but it was also already disputed by Smith in his response, *see* Dkt. No. 22 at 2-5. Smith's sur-reply serves only to provide additional support of his argument that the suit was timely filed.

The undersigned is sympathetic towards Smith's health issues. But Smith provides no reasons – health-related or otherwise – why he could not raise the sur-reply arguments in his original response.

And the undersigned agrees that, insofar as Smith attempts to raise equitable tolling for the first time in his sur-reply, Smith's sur-reply would create a "moving target" for Defendants. *Le v. Exeter Fin. Corp.*, No. 3:15-cv-3839-L, 2019 WL 1436375, at *6 (N.D. Tex. Mar. 31, 2019); *see* Dkt. No. 25 at 2.

And, so, because Smith neither sought leave of court to file a sur-reply nor demonstrated exceptional circumstances, the Court should grant the motion to strike [Dkt. No. 25] Smith's sur-reply, deny Smith's motion for leave [Dkt. No. 27], and deny

Defendants' motion for leave [Dkt. No. 28] as moot.

## II.    Motion to Dismiss

### A. ADA and Section 1981 Claims

Smith sues Defendants under the Americans with Disabilities Act, 42 U.S.C. §§ 12112, *et seq.* ("ADA") and 42 U.S.C. § 1981 against his employer for failure to promote, failure to accommodate, imposing unequal terms and conditions of employment, and retaliation. *See* Dkt. No. 3 at 3-4.

The ADA prohibits employers from discriminating against qualified employees on the basis of disability. *See* 42 U.S.C. § 12112(a). But the United States is not an "employer" covered by the statute. *See* 42 U.S.C. § 12112(5)(B) ("The term 'employer' does not include the United States … .") (cleaned up); *see also Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003) ("[T]he entire federal government is excluded from the coverage of the ADA.").

Similarly, Section 1981 does not permit claims against the federal government because the statute "contains no explicit waiver of sovereign immunity." *See Taylor v. Fed. Home Loan Bank Bd.*, 661 F. Supp. 1341, 1344 (N.D. Tex. 1986) (citing *Penn v. Schlesinger*, 490 F.2d 700, 703 (5th Cir. 1973), *rev'd on other grounds*, 497 F.2d 970 (1974) (en banc)); *see also Henrickson*, 327 F.3d at 446 (affirming district court decision that Section 1981 "does not permit discrimination actions against the federal government") (citing *Eastland v. Tenn. Valley Auth.*, 553 F.2d 364, 371 (5th Cir. 1997)).

Here, Smith's employer was the United States Citizenship and Immigration

Services ("USCIS") – a federal agency. *See* Dkt. No. 3 at 6. And Defendants are sued in their official capacity as agents of the federal government. *See id.* (alleging that Defendant Sampson was "acting in his capacity as an agent of" the USCIS and directing allegations toward "the Agency").

And, so, Smith's ADA and Section 1981 claims fail for lack of subject-matter jurisdiction. *Accord Webster v. Mattis*, 279 F. Supp. 3d 14, 18 (D.D.C. 2017) (holding that the court lacks subject-matter jurisdiction where Congress has not waived sovereign immunity).

The Court should dismiss Smith's ADA and Section 1981 claims.

## B. Title VII and Rehabilitation Act Claims

Smith also sues Defendants under Title VII of the Civil Rights Act of 1964 and – construing his Complaint liberally – Section 501 of the Rehabilitation Act of 1973. *See* Dkt. No. 3 at 3; *see also* Dkt. No. 12 at 11 n.3.

### 1.  Proper Defendants

Smith brought his claims against then-Acting Secretary of Homeland Security Benjamine C. Huffman, USCIS Director Ur M. Jaddou, USCIS Supervisory Operations Support Specialist Jeffrey W. Sampson, and Department of Homeland Security ("DHS") Section Chief Conchetta Mason. *See* Dkt. No. 3 at 2-3. Huffman has since been terminated as a defendant and replaced by the current Secretary of Homeland Security Kristi Noem. *See* Dkt. No. 12 at 1 n.1.

"In Title VII and Rehabilitation Act cases brought by federal employees, the proper defendant is the head of the department, agency, or unit as appropriate."

*LaPastora v. Employing Agency*, No. 3:97-cv-3188-L, 2000 WL 739426, at *2 (N.D. Tex. June 7, 2000) (citing 42 U.S.C. § 2000e-16(c); *Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1998)).

"As the head of DHS, [the] Secretary, in [her] official capacity, is the only proper defendant in this employment discrimination action." *Tanzy v. Mayorkas*, No. 3:20-cv-3579-N-BH, 2021 WL 7627499 (N.D. Tex. Sept. 30, 2021) (citing *Mills v. U.S. Dep't of Homeland Sec.*, No. 4:13-cv-352-A, 2013 WL 3356417, at *1 (N.D. Tex. July 3, 2013)), *rec. adopted*, 2022 WL 847236 (N.D. Tex. Mar. 22, 2022).

And, so, the Court should dismiss Smith's Title VII and Rehabilitation Act claims against Defendants Jaddou, Sampson, and Mason.

But the undersigned will consider the following alternative arguments against these claims as to all Defendants.

2. Protected Class

Title VII prohibits employers from discriminating against individuals with respect to their "compensation, terms, conditions, or privileges of employment" on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Disability is not a protected class under Title VII. *See Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 341, 443 (S.D. Tex. 2010).

Because Smith's claims are based only on disability discrimination, he cannot allege a plausible Title VII claim. *See* Dkt. No. 3 at 4.

Rather, "[t]he Rehabilitation Act provides 'the exclusive remedy for a federal employee alleging disability-based discrimination.'" *Davis v. Brennan*, No. 3:17-cv-

1002-M-BH, 2020 WL 2106351, at *2 (N.D. Tex. Apr. 6, 2020) (quoting *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008)), *rec. adopted*, 2020 WL 2104227 (N.D. Tex. Apr. 30, 2020).

And, so, the Court should dismiss Smith's Title VII claim.

3.    Exhaustion of Administrative Remedies and Timely Filing Suit

"Before a federal employee can file suit in federal court for discrimination under Title VII and the Rehabilitation Act, he must exhaust his administrative remedies." *Id.* (citing *Green v. Brennan*, 578 U.S. 547, 551-52 (2016) (citing, in turn, 42 U.S.C. § 2000e-16(c)); *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998); footnote omitted); *accord Smith v. Potter*, 400 F. App'x 806, 811 (5th Cir. 2010) ("The Rehabilitation Act adopts the 'remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964.' 29 U.S.C. 794a(a)(1). Thus, 'the Rehabilitation Act ... established a private right of action subject to the same procedural constraints (administrative exhaustion, etc.) set forth in Title VII of the Civil Rights Act.'") (citing *Prewitt v. U.S. Postal Serv.,* 662 F.2d 292, 304 (5th Cir. Unit A 1981)) (cleaned up).

These "charge-filing instruction[s are] not jurisdictional ... . [Instead,] they are properly ranked among the array of claim-processing rules that must be timely raised to come into play." *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 543-44 (2019).

That is, "[f]ailure to exhaust is an affirmative defense that should be pleaded." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018) (citations omitted).

Limitations is too. *See Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-cv-4997-D, 2015 WL 1757358, at *2 (N.D. Tex. Apr. 17, 2015) (citing *Adams v. Cedar Hill Indep. Sch. Dist.*, No. 3:13-cv-2598-D, 2014 WL 66488, at *2 (N.D. Tex. Jan. 8, 2014)).

And, "[t]o obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the successful affirmative defense must appear clearly on the face of the pleadings." *Taylor v. Lear Corp.*, No. 3:16-cv-3341-D, 2017 WL 6209031, at *2 (N.D. Tex. Dec. 8, 2017) (cleaned up).

"Stated another way, the defendant is not entitled to dismissal under [either Rule 12(b)(6) or Federal Rule of Civil Procedure] 12(c) unless the plaintiff has pleaded herself out of court by admitting to all of the elements of the defense." *Clemmer*, 2015 WL 1757358, at *2 (cleaned up).

Here, Smith references an internal complaint in his pleadings. He alleges that, on December 11, 2021, he "filed a charge with the Equal Employment Opportunity Commission [("EEOC")] or [his] Equal Employment Opportunity [("EEO")] counselor regarding the [Defendants'] alleged discriminatory conduct." Dkt. No. 3 at 7. And, although he did not attach a charge to his Complaint, Defendants have attached Smith's Individual Complaint of Employment Discrimination (the "EEO Complaint") filed with the DHS to their motion to dismiss. *See* Dkt. No. 13 at 3-4.

And the EEO Complaint is central to his claims. *See Millan v. Bexar Cnty., Texas*, No. SA-21-cv-0659-JKP-HJB, 2022 WL 62541, at *5 (W.D. Tex. Jan. 5, 2022) ("[T]he EEOC documents are necessary to the Court's analysis of Defendant's contention that several of Plaintiff's claims are subject to dismissal for failure to

exhaust administrative remedies.").

And, so, the EEO Complaint is part of the pleadings.

The Court must examine an EEOC charge or EEO internal complaint made part of the pleadings to determine the scope of claims exhausted by it, keeping in mind "that 'the scope of an EEOC complaint should be construed liberally." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). But this liberal construction must be weighed against the statutory goals of "trigger[ing] the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89.

> And, to attain a balance between the two, courts in this circuit interpret
>
> "what is properly embraced in review of a [wrongful employment practice] claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "[Courts should] engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

*Patton*, 874 F.3d at 443.

And, so, "[i]n analyzing whether a complainant has exhausted her administrative remedies, the crucial element of a charge of discrimination is the factual statement contained therein." *Nuñez-Renck v. Int'l Bus. Machs. Corp.*, No. 3:23-cv-1308-D, 2024 WL 2024 WL 4995572, at *5 (N.D. Tex. Dec. 5, 2024) (cleaned up); *see also Stingley v. Watson Quality Ford, Jackson, MS*, 836 F. App'x 286, 291 (5th

Cir. 2020) (per curiam) ("Courts assess whether a claim is like or related to the underlying EEOC charge through a fact-intensive analysis of the statement given by the plaintiff in the administrative charge." (cleaned up)).

In his EEO Complaint, Smith "[d]escribe[d] the action taken against [him] that [he] believe[d] was discriminatory" as follows:

> On September 27, 2021 a member of management verbally berated me without lawful authority and physically intimidated me by standing outside my vehicle and yelling at me for parking in handicapped parking place despite my possessing a placard.

Dkt. No. 13 at 4. The EEO Complaint did not raise any other basis of discrimination. *See id.*

But Smith's current lawsuit brings claims for failure to promote, failure to accommodate, imposing unequal terms and conditions of employment, and retaliation. *See* Dkt. No. 3 at 4. While his Complaint is mostly comprised of facts about the parking lot altercation that formed the basis of his EEO Complaint, it adds that Smith "applied for positions during this time period and … was passed over for selection although he was qualified." *Id.* Smith's EEO Complaint and its factual content contain nothing that could trigger the investigation of a claim based on failure to promote.

And the allegations in Smith's lawsuit are discrete acts that must be separately exhausted. *See Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005) (holding that failure to accommodate is a discrete act); *Mueblas-Curtis v. Am. Airlines, Inc.*, No. 3:25-cv-1201-D, 2025 WL 3022852, at *4 (N.D. Tex. Oct. 29, 2025) ("Discrete discriminatory acts include 'termination, failure to promote, denial of

transfer, or refusal to hire … .'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *cf. Hellman v. Austin Cmty. Coll. Dist.*, No. 1:23-cv-1436-DAE, 2025 WL 548276, at *2 (W.D. Tex. Feb. 18, 2025) ("Plaintiffs alleging hostile work environment – as opposed to plaintiffs alleging discrete violations – are not limited to filing suit based on events within the statutory period because their claims are 'comprised of a series of separate acts that collectively constitute one unlawful employment practice.'") (cleaned up; quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009)).

And, so, insofar as Smith asserts a failure-to-promote claim, it fails because Smith has not exhausted it.

And, in any case, his claims are time barred.

"Plaintiffs filing claims under Title VII and the Rehabilitation Act have ninety days to file a civil action in federal court after receipt of 'final agency action.'" *Thomas v. McDonough*, No. 3:22-cv-2272-S, 2024 WL 1319727, at *2 (N.D. Tex. Mar. 26, 2024) (citing 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a); *McCloud v. McDonough*, No. 22-10357, 2023 WL 2525656, at *2 (5th Cir. 2023) (citation omitted)).

Smith alleges that "the [EEOC] has determined that [Smith] does not have a remedy under 42 U.S.C. § 2000e-2(a)." Dkt. No. 3 at 6. His Complaint does not include the date on which he received that decision. But Defendants have attached a copy of the EEOC's Decision on Request for Consideration (the "Decision") to their motion to dismiss. *See* Dkt. No. 13 at 5-11. Smith does not refute that this was the EEOC's "final agency action" or otherwise dispute the document's relevance or authenticity.

And, so, the Court may consider the Decision because it is referenced in Smith's Complaint, central to his claims, and a public record of which the Court may take judicial notice. *Accord Millan*, 2022 WL 62541, at *5; *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) ("In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." (collecting cases)); *cf. Boshears v. Polaris Eng'g*, No. 3:22-cv-53, 2023 WL 2844930, at *3 (S.D. Tex. Mar. 27, 2023) (refusing to take judicial notice of the Charge Detail Inquiry where the parties disputed its application to the timeliness of plaintiff's complaint), *rec. adopted*, 2023 WL 3305165 (S.D. Tex. May 8, 2023)).

The Decision was issued on October 24, 2024. *See* Dkt. No. 13 at 10. Smith does not allege the date on which he received the Decision, but the Decision states that "the Commission will presume that this decision was received within five (5) calendar days after it was made available to the parties." *Id.* at 11; *accord Taylor v. Books A Million,* 296 F.3d 376, 379 (5th Cir. 2002) (explaining that courts presume receipt of EEOC right-to-sue letter within a range of three to seven days after it was issued). And, so, Smith is presumed to have received the Decision on October 29, 2024 and had 90 days – that is, until January 27, 2025 – to file this lawsuit. But he filed on February 4, 2025. *See* Dkt. No. 3.

Smith argues that the filing date is determined by when he mailed the complaint – January 22, 2025 – and, so, the lawsuit was timely filed. *See* Dkt. No. 22 at 2-3. But "[t]he general rule is that a document submitted by postal mail is deemed 'filed' on the date it is received by the clerk, not the date it was sent." *Ekewere v.*

*Davis*, No. 7:19-cv-92, 2021 WL 4483508, at *2 (S.D. Tex. Jan. 21, 2021) (citations omitted); *accord City of Del Rio, Tex. v. CH2M Hill, Inc.*, No. DR-09-cv-41-AML-VRG, 2010 WL 11506421, at *5 (W.D. Tex. Jan. 25, 2010) ("When papers are mailed to the clerk's office, filing is complete only upon the clerk's receipt of them." (citing *McIntosh v. Antonio*, 71 F.3d 29, 36 (1st Cir. 1995)); *see also Hernandez v. Aldridge*, 902 F.2d 386, 388 (5th Cir. 1990) (finding *pro se* plaintiff's Title VII complaint was "filed" "when the clerk received the complaint").

Smith has not alleged facts that warrant an exception to this general rule. *Cf. Silver v. Dalessandro*, No. 15-cv-3462 (ARR) (ST), 2019 WL 5902645 at *4 n.4 (applying exception for incarcerated *pro se* litigants) (citing *Houston v. Lack*, 487 U.S. 266, 275-76 (1988)).

And, so, Smith failed to file his Rehabilitation Act claims within the required timeframe. And, for the same reasons, even if he could bring a Title VII claim, it would also be untimely.

The Court should dismiss Smith's Title VII and Rehabilitation Act claims.

## C. State-Law Tort Claims

To the extent that Smith sues Defendants for state-law tort claims – as appears likely, liberally construing the allegations of his Complaint – the Federal Torts Claims Act ("FTCA") "is the exclusive remedy for suits against the United States or its agencies sounding in tort." *Willoughby v. U.S. ex rel U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (citing 28 U.S.C. § 2679(a)); *see* Dkt. No. 3 at 3. That statute's "limited waiver of sovereign immunity [ ] allows plaintiffs to bring state law

tort actions against the federal government." *Tsolomon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (citing 28 U.S.C. § 2674). And "[c]ourts consider whether the FTCA applies via a Rule 12(b)(1) motion, because whether the government has waived its sovereign immunity goes to the court's subject matter jurisdiction." *Id.* (citing *Willoughby*, 730 F.3d at 479; 28 U.S.C. § 1346(b)(1)).

But such claims "may be brought against only the United States, and not the agencies or employees of the United States." *Esquivel-Solis v. United States*, 472 F. App'x 338, 340 (5th Cir. 2012) (per curiam) (citing 28 U.S.C. §§ 2671, 2679; *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1988)). "[A]n FTCA claim brought against a federal agency or employee rather than the United States shall be dismissed for want of jurisdiction." *Id.* (citations omitted).

And, so, the Court should dismiss Smith's state-law tort claims, if any.

### D. Insufficient Service of Process

On March 6, 2025, the Court ordered Smith to file proof of proper service on Defendants. *See* Dkt. No. 7. And it ordered that, if Smith did not do so by May 5, 2025, his suit was subject to dismissal without prejudice. *See id.*

On April 29, 2025, Smith filed a Certificate of Service (the "Certificate") informing the Court that he had effectuated service on Defendants. *See* Dkt. No. 8. The Certificate states that Smith "served the documents on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 4(i)(1) and (2)." *Id.* And it lists the addresses of each Defendant. *See id.*

Defendants contend that Smith mailed the summons to them personally, *see*

Dkt. No. 12 at 22, which is prohibited by the Texas and Federal Rules of Civil Procedure, *see Blanton-Bey v. Carrell,* No. H-09-3697, 2010 WL 1337740, at \*2 (S.D. Tex. Mar. 26, 2010) (noting that "[n]either the federal nor the state rules of civil procedure allow a party to serve process" and, thus, there, "plaintiff's attempt to serve the defendant was ineffective" (citing FED. R. CIV. P. 4(c)(2); TEX. R. CIV. P. 103; *Florance v. Buchmeyer,* 500 F. Supp. 2d 618, 632-33 (N.D. Tex. 2007))); *Sherman v. Dallas ISD,* No. 3:10-cv-1146-B-BH, 2011 WL 477500, at \*2 (N.D. Tex. Jan. 24, 2011) ("Plaintiff's attempt to serve DISD was ineffective because the federal and state rules of civil procedure do not allow a party to serve process" (citations omitted)), *rec. adopted,* 2011 WL 477465 (N.D. Tex. Feb. 8, 2011); *see also Lucky v. Haynes,* No. 3:12-cv-2609-B, 2013 WL 3054032, at \*2 (N.D. Tex. June 18, 2013) ("Upon amendment of the relevant [Texas] rules, federal district courts in Texas interpreting Texas Rule 103 have found that the clerk of the court or one of the three authorized persons in Rule 103 can serve process by certified mail." (citations omitted)).

The undersigned cannot determine from the record what method Smith used to serve Defendants. But, assuming that he personally mailed the summons to Defendants, that method of service would be improper.

And, in any case, Texas law requires that certain information be included in the return of service, including "the date of service or attempted service," "a description of what was served," and "the manner of delivery or attempted "service." TEX. R. CIV. P. 107(b). Rule 107 also requires proof of delivery or receipt, with the

form depending on the method of service. For example, "when certified mail has been selected as the method of service, Texas law further requires that the return receipt be signed by the addressee." *Lucky,* 2013 WL 3054032, at *3 (citing TEX. R. CIV. P. 107(c); *Keeton v. Carrasco,* 53 S.W.3d 13, 19 (Tex. App. – San Antonio 2001, pet. denied)).

The Certificate lacks much of this requisite information. And, so, Smith has not filed proof of proper service with the Court.

Because the Court already warned Smith of his obligations to comply with Federal Rule of Civil Procedure 4 by May 5, 2025, the Court should, in the alternative, dismiss Smith's lawsuit on this basis. *See* FED. R. CIV. P. 4(m); *see also* FED. R. CIV. P. 41(b) (providing for dismissal, with or without prejudice, for failure to prosecute and obey court orders).

### E. Leave to Amend

The Court should dismiss Smith's lawsuit with prejudice because, although he has not amended his complaint, he has pleaded his best case and any further amendments would be futile. *See Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) ("Ordinarily, a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed. Rule 15(a) provides that leave to amend shall be freely given when justice so requires. The language of this rule evinces a bias in favor of granting leave to amend. Granting leave to amend, however, is not required if the plaintiff has already pleaded her best case. A plaintiff has pleaded her best case after she is apprised of the insufficiency of

her complaint. A plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court. Similarly, a district court need not grant a futile motion to amend." (cleaned up)).

Smith's ADA and Section 1981 claims against Defendants fail for lack of subject-matter jurisdiction because these claims cannot be brought against the federal government.

His Title VII and Rehabilitation Act claims against Defendants Jaddou, Sampson, and Mason fail because they are not proper defendants for these claims. These claims also fail as to all Defendants because disability is not a protected class under Title VII and Smith failed to exhaust his administrative remedies and timely sue under both statutes.

And, so, even if Smith were granted leave to amend his allegations, he could not plausibly assert any ADA, Section 1981, Title VII, or Rehabilitation Act claims against Defendants.

The Court should dismiss his claims with prejudice.

## Recommendation

The Court should grant Defendants' motion to strike [Dkt. No. 25], deny Plaintiff Brent Wade Smith's motion for leave [Dkt. No. 27] and Defendants' motion for leave [Dkt. No. 28], grant Defendants' motion to dismiss [Dkt. No. 12], and dismiss this lawsuit with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 9, 2026

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE